# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JANE ROE, ET AL.                                    CIVIL ACTION

VERSUS                                              23-1324-SDD-SDJ

EAST BATON ROUGE PARISH SCHOOL
BOARD, ET AL.

## RULING

Pending before the Court are two motions. Defendant Sito Narcisse ("Narcisse") filed a *Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(e), 17(b)(3)*.[1] Defendants East Baton Rouge Parish School Board ("EBRSB"), Mark Bellue, Dadrius Lanus, Michael Gaudet, Tramelle Howard, Dawn Collins, Evelyn Ware-Jackson, Jill Dyason, Connie Bernard, David Tatman, Carla Powell, Shashonnie Steward, Cliff Lewis, Nathan Rust, Katie Kennison, and Patrick Martin (collectively, the "School Board Defendants") filed a *Motion to Dismiss*[2] pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Jane Roe, Jennifer Roe, Jane Doe, and Jesse Doe ("Plaintiffs") filed a *Combined Memorandum in Opposition*[3] to both *Motions*. Narcisse and the School Board Defendants filed *Replies*.[4] For the reasons that follow, the *Motions* will be granted in part and denied in part.

---

[1] Rec. Doc. 28.
[2] Rec. Doc. 30.
[3] Rec. Doc. 39.
[4] Rec. Docs. 40, 41.

## I.    BACKGROUND

This lawsuit was initiated by a Complaint[5] filed in this Court by Plaintiffs on September 19, 2023. Plaintiffs filed an Amended Complaint[6] two days later. According to the Amended Complaint, at the time of the events giving rise to the lawsuit, Plaintiffs Jennifer Roe ("Jennifer") and Jesse Doe ("Jesse") were high school seniors "in schools under the supervision, control, and direction of EBRSB."[7] Plaintiffs Jane Roe and Jane Doe are the parents of Jennifer and Jesse, respectively.[8] Named as Defendants in the action are the School Board Defendants (including EBRSB itself and the individual board members listed above), Narcisse, 29:11 Academy ("29:11"), and Tremaine Sterling ("Sterling").[9] Narcisse was the Superintendent of Schools of East Baton Rouge Parish during the relevant time.[10] 29:11 Academy is a nonprofit organization which allegedly developed the "Day of Hope" program about which Plaintiffs complain.[11] Sterling is allegedly the registered agent and president of 29:11.[12]

Plaintiffs' lawsuit centers around the overarching allegation that, "[f]or several years going back to at least 2016, Narcisse, 29:11, and Sterling were engaged in a conspiracy to expose public school children to overtly sectarian and religious experiences directly through the East Baton Rouge School System and EBRSB, often without the knowledge or permission of the students' parents or guardians."[13] More specifically, Plaintiffs allege that "Narcisse and Sterling developed a program called 'Day of Hope',

---

[5] Rec. Doc. 1.
[6] Rec. Doc. 4.
[7] *Id.* at ¶ 23.
[8] *Id.* at ¶¶ 2, 4.
[9] *Id.* at ¶¶ 6–12.
[10] *Id.* at ¶ 7.
[11] *Id.* at ¶ 11.
[12] *Id.* at ¶ 12.
[13] *Id.* at ¶ 17.

whereby public school students of the East Baton Rouge School System would be sent to a religious service during school time, chaperoned by EBRSB employees."[14] According to Plaintiffs, Narcisse and Sterling misled parents and students regarding the nature of the Day of Hope program, "using generic themes like 'hope', 'trauma', 'growth', 'help', 'the power of choices', 'truth', etc. to mask what would be overtly religious and sectarian programming."[15] Similarly, Plaintiffs allege that "Narcisse, Sterling, 29:11, and EBRSB advertised the 2022 event to parents and students as a 'College and Career Fair', providing 'a college and career fair, breakout sessions, live music, a keynote speaker, free food, and more.' None of the promotional materials or advertisements for the event provided any obvious religious connection."[16] Plaintiffs claim that, "[i]n actuality, 'Day of Hope' speakers were almost exclusively pastors or other religious speakers who describe their participation in the public school event as 'worship[]' and 'minister[ing] to over 1000 kids', including hashtags on social media posts describing the event like '#GodGetsTheGlory'."[17] Plaintiffs allege the religious nature of the program was not apparent "from the promotional materials pushed out by EBRSB, 29:11, Sterling, and Narcisse[.]"[18]

Plaintiffs specifically complain about the Day of Hope event that took place in 2022, which Jennifer and Jesse attended. Plaintiffs allege that in July of 2022, "Narcisse, on behalf of EBRSB, and Sterling, on behalf of 29:11, executed a 'Memorandum of Understanding', describing the 'Day of Hope' event as a 'student conference and college

---

[14] *Id.* at ¶ 18.
[15] *Id.* at ¶ 19.
[16] *Id.* at ¶ 25.
[17] *Id.* at ¶ 20 (citing Exhibit 1 to Amended Complaint).
[18] *Id.* at ¶ 26 (citing Exhibit 3 to Amended Complaint).

fair' where 'teens will get an opportunity to receive collegiate and trade school exposures to help reach their full potential in life.'"[19] The Memorandum of Understanding ("MOU") allegedly provided for EBRSB to pay $9,800 in public funds to 29:11, and Plaintiffs claim "this contract and payment were made with the knowledge and acquiescence of the EBRSB and Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman."[20]

Jennifer and Jesse attended the Day of Hope program in 2022.[21] They were minors at the time.[22] Plaintiffs allege:

> The event immediately took the form of a Christian church service, with speakers and presenters praying and making repeated, overt appeals to Jesus and God. Sterling, 29:11, Narcisse, and EBRSB exposed Jennifer Roe and Jesse Doe, as well as several other students, to overt Christian presentations involving prayer and proselytizing, compelling their participation against their wishes and without their consent.[23]

Plaintiffs further allege that "there were almost no colleges or trades present for the event," and no opportunities to "get hired on the spot" as the Defendants had suggested in advertising and promoting the event.[24]

Later in the program, Plaintiffs allege that students were separated into groups by gender, and "Sterling, 29:11, and other presenters and facilitators of the event acted with hostility toward transgender and gender non-binary students, including Jesse Doe, forcing them into either the male or female segregated gender group based on their outward

---

[19] *Id.* at ¶ 24 (citing Exhibit 2 to Amended Complaint).
[20] *Id.*
[21] *Id.* at ¶ 23.
[22] *Id.*
[23] *Id.* at ¶ 30.
[24] *Id.* at ¶ 31.

appearance and without their consent," resulting in mental anguish and distress.[25] Further, it is alleged that traumatizing "gender talks" took place specifically with the female students: "While the boys competed in physical activity contests for prize money, girls were graphically lectured by pastors and other religious figures about virginity, rape, abuse, and suicide and were even told to 'forgive' their rapists and abusers."[26] Plaintiffs claim that Jane Roe and Jane Doe were unaware that these events would take place at the Day of Hope, and they would not have consented to Jennifer and Jesse's attendance if they had been aware that this "segregation and abuse" would occur.[27]

Plaintiffs go on to allege additional instances of abuse, intimidation, and harassment at the Day of Hope program. Plaintiffs allege that, "[u]nder the supervision of 29:11, Sterling, and the adult volunteers present, students were allowed (and in some circumstances, encouraged) to harass LGBTQ+ student attendees, throwing water on them and taunting them. No representative of EBRSB or 29:11 intervened or did anything to stop or prevent this harassment."[28] Plaintiffs also claim that, "[o]n information and belief, one student repeatedly asked to go to the bathroom but was denied by an adult working the event under Sterling's and 29:11's direction. That adult told the student to urinate in a bottle on the side of the building rather than allow the student access to the restroom."[29] Additionally, Plaintiffs allege that "Sterling and 29:11 refused students [including Jennifer and Jesse] access to lunch unless the students completed a voter registration card,"[30]

---

[25] *Id.* at ¶ 32.
[26] *Id.* at ¶ 33.
[27] *Id.* at ¶¶ 32, 33.
[28] *Id.* at ¶ 34.
[29] *Id.* at ¶ 35.
[30] *Id.* at ¶ 36.

and left attendees outside in excessive heat without adequate hydration during the "gender talks."[31]

Finally, Plaintiffs allege that Jennifer and Jesse were required to participate "against their will" in an "altar call" at the end of the Day of Hope, "a common practice in evangelical Christian churches where participants are invited to the front of a church hall to declare their faith and devotion to Jesus Christ."[32] Plaintiffs assert that Jane Roe and Jane Doe would not have consented "to exposing their children to such an overtly sectarian event" if they had known this would occur.[33]

Plaintiffs assert that "EBRSB, Narcisse, Sterling, and 29:11 carried out all of the events described herein with the acquiescence and approval of Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman."[34] Plaintiffs claim continuing severe mental anguish and distress as a result of the Day of Hope, and allege that EBRSB provided no counseling or other services despite several students being traumatized by the events at the program.[35]

The Amended Complaint outlines the following causes of action:

- Count One: Deprivation of First Amendment Right to be Free from Establishment of Religion; action brought under 42 U.S.C. § 1983 against EBRSB, Narcisse, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman;[36]

---

[31] *Id.* at ¶ 37.
[32] *Id.* at ¶ 38.
[33] *Id.*
[34] *Id.* at ¶ 40.
[35] *Id.* at ¶¶ 41–43.
[36] *Id.* at ¶¶ 44–48.

- Count Two: Deprivation of Fourteenth Amendment Right to Direct Care, Custody, and Control of Children; action brought under 42 U.S.C. § 1983 against EBRSB, Narcisse, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman;[37]

- Count Three: Conspiracy to Violate Civil Rights; action brought under 42 U.S.C. § 1983 against 29:11, Sterling, EBRSB, Narcisse, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman;[38]

- Count Four: Title IX Sex Discrimination against 29:11, Sterling, EBRSB, Narcisse, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman;[39]

- Count Five: Violation of Louisiana Parents' Bill of Rights (La. R.S. § 17:406.9) against EBRSB, Narcisse, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman;[40]

- Count Six: Negligence against EBRSB, 29:11, and Sterling;[41]

- Count Seven: Intentional Infliction of Emotional Distress against EBRSB, 29:11, and Sterling;[42]

- Count Eight: Fraud against EBRSB, Narcisse, 29:11, and Sterling;[43]

Plaintiffs seek monetary, injunctive, and declaratory relief.[44]

---

[37] *Id.* at ¶¶ 49–53.
[38] *Id.* at ¶¶ 54–57.
[39] *Id.* at ¶¶ 58–63. In their Opposition, Plaintiffs concede that their Title IX claims do not lie against any individual Defendant (Rec. Doc. 39, p. 35). Thus, there are no Title IX claims against the individuals named in this count.
[40] *Id.* at ¶¶ 64–68.
[41] *Id.* at ¶¶ 69–74.
[42] *Id.* at ¶¶ 75–79.
[43] *Id.* at ¶¶ 80–85.
[44] *Id.* at ¶¶ 86–94.

Narcisse moves to dismiss pursuant to Rule 12(b)(1) on the basis of Eleventh Amendment immunity and Rule 12(b)(6) for failure to state a claim. Narcisse also argues that Jane Roe lacks procedural capacity to sue on behalf of Jennifer under Rule 17(b)(3). Additionally, Narcisse moves for a more definite statement pursuant to Rule 12(e).

The School Board Defendants move to dismiss pursuant to Rule 12(b)(6) and also argue that Jane Roe lacks procedural capacity to sue under Rule 17(b)(3).

## II.    LAW AND ANALYSIS

### A. Preliminary Points

#### 1. Procedural Capacity of Jane Roe

Narcisse and the School Board Defendants have asserted a defect in Jane Roe's procedural capacity to sue on behalf of her child, Jennifer.[45] However, Plaintiffs subsequently filed an Unopposed Motion to Substitute Party[46] indicating that Jennifer reached the age of majority and requesting that she be substituted in her own capacity in place of Jane Roe suing on behalf of Jennifer. The Court granted the Motion, ordering that Jennifer in her own capacity replace Jane Roe as party plaintiff suing on behalf of Jennifer.[47] However, Jane Roe remains as a Plaintiff suing on her own behalf.[48] Therefore, the capacity issue has been resolved, and Defendants' objection to Jane Roe's procedural capacity to sue on behalf of Jennifer is denied as moot.

---

[45] Rec. Doc. 30-1, p. 5; Rec. Doc. 28-1, p. 8.
[46] Rec. Doc. 35.
[47] Rec. Doc. 36.
[48] *Id.*

### 2. Plaintiffs' official-capacity claims against Narcisse and the individual School Board members are dismissed as redundant.

As to Plaintiffs' official-capacity claims against Narcisse and the individual School Board members, the Supreme Court and Fifth Circuit have both recognized that suits against a public official in his official capacity, "generally represent another way of pleading an action against an entity of which an officer is an agent."[49]  Here, Plaintiffs' official-capacity claims against Narcisse and the individual School Board members are redundant of the claims against EBRSB itself.[50]  Although they have not expressly moved for such relief, the Court *sua sponte* dismisses Plaintiffs' official-capacity claims against Narcisse and the individual School Board members as redundant of their claims against EBRSB.[51] Therefore, the claims against Narcisse and the individual School Board members (including Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman) will proceed only as individual-capacity claims. Because Defendants Powell, Steward, Lewis, Rust, Kennison, and Martin are sued only in their official capacities,[52] they will be dismissed from this action.

### 3. The School Board Defendants' Exhibits

The School Board Defendants attached eight exhibits to their Motion[53] and request that the Court take judicial notice of these materials because they are matters of public

---

[49] *Burge v. Par. Of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell*, 436 U.S. at 691 n.55)); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Hafer v. Melo*, 502 U.S. 21, 27 (1991).
[50] *Eltalawy v. Luccock Independent School District*, 816 F. App'x 958, 963 (5th Cir. 2020) (citing *Hafer v. Melo*, 502 U.S. 21 (1991), *Weathers v. Sch. Bd. of Lafayette Par.*, 281 F. App'x 428, 428-29 (5th Cir. 2008)).
[51] *See Notariano v. Tangipahoa Par. Sch. Bd.*, 266 F. Supp. 3d 919, 928 (E.D. La. 2017) ("If the claims against an official in his official capacity seek identical relief as claims against a governmental entity, the official capacity claims may be dismissed as duplicative.") (citing *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)).
[52] *Id.* at ¶ 10.
[53] Rec. Docs. 30-2, 30-3, 30-4, 30-5, 30-6, 30-7, 30-8, 30-9.

record.[54] The exhibits consist of seven EBRSB policies and one collection of meeting minutes in connection with EBRSB meetings that purportedly took place in the twelve months immediately preceding the 2022 Day of Hope.

According to Federal Rule of Evidence 201, "the [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[55] Further, "[t]he [C]ourt may take judicial notice at any stage of the proceeding."[56] Although the decision of whether to take judicial notice of a fact is generally within the discretion of the trial court, a court "must take judicial notice if a party requests it and the court is supplied with the necessary information."[57]

As the School Board Defendants argue, courts have recognized that "'[p]ublic records and government documents are generally considered not to be subject to reasonable dispute,' and '[t]his includes public records and government documents available from reliable sources on the Internet.'"[58] Moreover, the Fifth Circuit in at least one case has taken judicial notice of "the subject matter and contents of" school board policies cited by a party who moved to dismiss under Rule 12(b)(6).[59]

The School Board Defendants provided the address to the EBRSB website where all of the exhibits can be accessed.[60] However, as Plaintiffs point out,[61] none of the

---

[54] Rec. Doc. 30-1, pp. 6–7.
[55] Fed. R. Evid. 201(b).
[56] Fed. R. Evid. 201(d).
[57] Fed. R. Evid. 201(c)(2).
[58] *U.S. E.E.O.C. v. E.I. DuPont de Nemours & Co.*, No. CIV.A. 03-1605, 2004 WL 2347559, at *1 (E.D. La. Oct. 18, 2004) (quoting *In re Dingle,* 270 F.Supp.2d 968, 971 (W.D. Mich. 2003)).
[59] *Van Deelen v. Cain,* 628 F. App'x 891, 894 (5th Cir. 2015).
[60] EBR Schools, https://ebrschools.org/CAPS/EastBatonRougeCAPS.htm (last visited Oct. 3, 2024).
[61] Rec. Doc. 39, p. 18.

documents are dated. Courts have declined to take judicial notice of undated materials, even when the materials come from reliable websites.[62] With no indication of when the Board Policies were adopted, the exhibits are "subject to reasonable dispute"[63] regarding whether they were in place during the relevant time.

Furthermore, the way that the School Board Defendants attempt to use these materials is problematic. As noted by leading commentators, "strict limits on the scope of judicial notice are needed to prevent judges from encroaching on the right to trial by jury."[64] More specifically, other courts have explained that courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed."[65] Along the same lines, the Ninth Circuit has stated:

> The overuse and improper application of judicial notice ... can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.[66]

The Ninth Circuit continued to state that "accuracy is only part of the inquiry under Rule 201(b). A court must also consider—and identify—which fact or facts it is noticing from such [materials]. Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its

---

[62] *See, e.g., Arroyo v. Club Donatello Owners Ass'n*, No. 21-CV-00998-DMR, 2021 WL 5889349, at *2 (N.D. Cal. Dec. 13, 2021) (declining to take judicial notice of printouts from Illinois and California Secretary of State websites because "none of the documents are dated and defense counsel's declaration does not properly authenticate them by explaining how and when counsel obtained them.").
[63] Fed. R. Evid. 201(b).
[64] 21B Wright & Miller, Fed. Prac. & Proc. Evid. § 5102.2 (2d ed.).
[65] *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1031 (N.D. Cal. 2018).
[66] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018).

truth."[67] The court further stated that it may be improper to judicially notice materials for certain purposes when the exhibit "is subject to varying interpretations, and there is a reasonable dispute as to what the [exhibit] establishes."[68]

The Court finds that the School Board Defendants' undated exhibits are "subject to reasonable dispute,"[69] and "reasonable people could debate exactly what"[70] several of the School Board Defendants' exhibits establish. Rather than discuss each exhibit in isolation here, the Court will address the exhibits throughout this Ruling in the contexts the School Board Defendants attempt to use them in support of their Motion.

### B. Narcisse's Motion to Dismiss under Rule 12(b)(1)

Narcisse argues that he is entitled to immunity under the Eleventh Amendment.[71] The Fifth Circuit "has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.[72] Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case. The party asserting that the court has jurisdiction bears the burden of proving that the court may adjudicate the case.[73]

 A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).[74] Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." However, when ruling on a Rule 12(b)(1) motion, "the

---

[67] *Id*. at 999.
[68] *Id*. at 1000 (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011)).
[69] Fed. R. Evid. 201(b).
[70] *Id*.
[71] Rec. Doc. 28-1, pp. 2–3.
[72] *United States v. Texas Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999) (collecting cases).
[73] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[74] *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[75] In reviewing a motion under Rule 12(b)(1), a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[76] "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[77]

"Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies."[78]  The Eleventh Amendment guarantees a non-consenting State (and any state agency or other political entity that is deemed an "alter ego" or "arm of the state") may not be sued in federal court by private individuals, including its own citizens.[79]  However, "[s]uits against a[sic] parish school boards are not considered suits against an arm of the state for Eleventh Amendment sovereign immunity purposes because their funding is largely local and, therefore, a judgment against these defendants would not tax the state treasury."[80]

---

[75] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 449 (5th Cir.2008)).

[76] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[77] *Ramming*, 281 F.3d at 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[78] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688–89 (5th Cir. 2002).

[79] *Id.*

[80] *Beasley v. Sch. Dist. Bd of Educ. Iberia Par.*, No. 6:21-CV-03276, 2022 WL 807043, at *5 (W.D. La. Feb. 24, 2022), *report and recommendation adopted*, No. 6:21-CV-03276, 2022 WL 806815 (W.D. La. Mar. 15, 2022) (citing *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 131-32 (5th Cir. 1986)); *see also Smith v. Concordia Parish School Bd.*, 387 F. Supp. 887, 891 (W.D. La. 1975) (permitting claims against individual school board members).

Because Narcisse is not an arm of the state entitled to Eleventh Amendment immunity, Narcisse's Rule 12(b)(1) Motion seeking Eleventh Amendment immunity is denied.

### C. Narcisse's Motion for More Definite Statement under Rule 12(e)

In a two-paragraph Motion, Narcisse seeks a more definite statement from the Complaint[81] to allow for responsive pleadings.[82]  Narcisse argues Plaintiffs' Complaint[83] is so vague and ambiguous that he cannot prepare a response.[84]  Narcisse contends that the allegations against him in his individual capacity are non-existent.[85] He further contends that the only allegations are that he, in his official capacity as superintendent, approved of the event as a career fair.[86]  Narcisse argues Plaintiffs make no claims as to any alleged individual actions.[87]  He asserts Plaintiffs allege Narcisse took part in a conspiracy without any supporting factual allegations.[88]

Under Fed. R. Civ. P. 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that a party cannot reasonably prepare a response[.]"[89] The motion must state the defects in the pleading and the details desired.[90] The standard for evaluating a motion for more definite statement is whether the complaint "is so excessively vague and ambiguous as

---

[81] Rec. Docs. 1, 4. Narcisse cites to Plaintiffs' original Complaint once and makes no other reference to the record. Plaintiff filed an Amended Complaint on September 21, 2023. Rec. Doc. 4. Narcisse received service of summons on December 14, 2023. Rec. Doc. 26. Narcisse's Motion was filed on February 2, 2024. Rec. Doc. 28-1, p. 7. Thus, it appears Narcisse seeks a more definite statement as to Plaintiffs' Amended Complaint, despite the incorrect reference. Rec. Doc. 4.
[82] Rec. Doc. 28-1, p. 7.
[83] Rec. Docs. 1, 4.
[84] Rec. Doc. 28-1, p. 7.
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] Fed. R. Civ. P. 12(e).
[90] *Id.*

to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."[91] Such motions are disfavored and granted sparingly.[92] However, in the words of the Supreme Court, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice," then a Rule 12(e) motion may be appropriate.[93] A party may not use a Rule 12(e) motion as a substitute for discovery;[94] however, "[i]f details are necessary in order to make a vague complaint intelligible, the fact that the details also are subject to the discovery process should not preclude their production under Rule 12(e)."[95] The decision to grant a Rule 12(e) motion is within the discretion of the trial court.[96]

Here, Plaintiffs' Complaint[97] meets the Rule 8 pleading standard.[98] A court must disfavor Rule 12(e) motions given the availability of extensive discovery to further elucidate a plaintiff's allegations.[99] Moreover, relief is unwarranted under Rule 12(e) when a pleading meets the minimal standard of Rule 8, the missing or vague information is already known to the defendant, or the information sought can otherwise be obtained by discovery.[100]

As stated in *Bitte v. United Cos. Lending Corp.*, Plaintiffs should "briefly explain who, what, when, where, why, and how" regarding Narcisse's alleged wrongdoings that

---

[91] *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006) (quoting *Advanced Communications Technologies, Inc. v. Li*, No. 05 Civ. 4628, 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005)) (citing *Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y. 1986)) (internal quotation marks omitted).

[92] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959); *Conceal City, LLC v. Looper Law Enforcement, LLC*, 917 F.Supp.2d 611, 621 (N.D. Tex. 2013).

[93] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

[94] *Id.*

[95] 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1376 (3d ed.).

[96] *Newcourt Leasing Corp. v. Regional Bio-Clinical Laboratory, Inc.*, No. CIV. A. 99-2626, 2000 WL 134700, at *1 (E.D. La. Feb. 1, 2000) (citation omitted).

[97] Rec. Doc. 4.

[98] Fed. R. Civ. P. 8(a)(2).

[99] *See City of DeQuincy v. Emps. Mut. Cas. Co.*, No. 2:22-CV-05822, 2023 WL 2604022, at *1 (W.D. La. Mar. 22, 2023).

[100] *Id.*

led to Plaintiffs' alleged damages.[101] Plaintiffs have done that. Narcisse is aware of the specific circumstances underlying Plaintiffs' allegations, including his role in the "Day of Hope" event. Discovery will clarify any additional uncertainties but at this stage the allegations are sufficient to enable Narcisse to respond to the Amended Complaint. Thus, relief under Rule 12(e) is denied.

### D. Narcisse's and the School Board Defendants' Motions to Dismiss under Rule 12(b)(6)

"Dismissal under Rule 12(b)(6) is disfavored and 'rarely granted.'"[102] When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[103] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[104] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[105]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

---

[101] *See Verret v. North Star Marine, LLC*, No. 09-3442, 2009 WL 3614502, at *2 (E.D. La. Oct. 28, 2009); citing *Bitte v. United Cos. Lending Corp.*, No. 06-5648, 2006 WL 3692754, at *1 (E.D. La. Dec. 11, 2006).
[102] *Nottingham v. Richardson*, 499 F. App'x 368, 372 (5th Cir. 2012) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982)).
[103] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[104] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).
[105] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

a cause of action will not do."[106] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[107] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[108] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully.[109] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[110] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[111]

The School Board Defendants and Narcisse move to dismiss for failure to state a claim on various grounds.

### 1. Actions under 42 U.S.C. § 1983

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[112] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct complained of was committed by a person acting under color of state law."[113]

---

[106] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[107] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).
[108] *Id*.
[109] *Id*.
[110] *Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[111] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[112] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).
[113] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D. La. 1998); *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 500 (M.D. La. 2013).

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[114] Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.[115] To be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.[116] A state actor may have Section 1983 liability in his individual capacity for actions causing the deprivation of a federal right taken under color of state law.[117]

Plaintiffs lodge both individual and official capacity-claims against Narcisse and the various School Board Defendants. However, as explained, the official-capacity claims remain only against EBRSB itself. Thus, the claims against individual members of EBRSB (specifically, Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman) and Narcisse proceed only as individual-capacity claims.

### a. Actions Taken Under Color of Law

Defendants Bellue, Lanus, Guadet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman argue that "Plaintiffs fail to sufficiently plead that the alleged deprivation of their constitutional rights was committed by a person or entity acting under color of state law."[118] These Defendants will hereinafter be referred to as the "Past Board Members" because they were members of EBRSB at the time of the Day of Hope event in 2022.

---

[114] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).
[115] *Id.*
[116] *Id.*
[117] *Coleman v. East Baton Rouge Sheriff's Office*, No. 14-00186-SDD-SCR, 2014 WL 5465816, at *3 (M.D. La. Oct. 28, 2014).
[118] Rec. Doc. 30-1, p. 9.

According to the Fifth Circuit, the "requirement that action be under color of state law is as essential as it is rigorous; a person does not act under color of state law solely by virtue of her relationship to the state, but depending on [their] function—i.e., the nature of her challenged conduct."[119] Moreover, "[r]egardless of one's affiliation with the state, a person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[120]

The Past Board Members argue that "board members are only 'clothed with authority of state law' when acting as one body in a legally called session."[121] In support of this point, the School Board Defendants reference two of the School Board Policies attached as exhibits to their Motion. Board Policy ABC provides the following, in pertinent part:

> Such status [as a duly appointed or elected member of EBRSB] does not authorize said member to act for or bind the School Board individually. The powers and duties vested in the School Board shall only be exercised by action of the School Board as a whole at duly called and organized meetings. In this respect, no motion or resolution shall be declared adopted without the concurrence of a simple majority of the School Board present and voting, unless otherwise stipulated by School Board policy or state law.[122]

Similarly, Board Policy BBBA states in pertinent part: "The members of the East Baton Rouge Parish School Board shall have authority only when acting as a School Board legally in session."[123]

---

[119] *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1411 (5th Cir. 1995) (citations omitted).
[120] *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941)) (internal quotation marks omitted).
[121] Rec. Doc. 30-1, p. 10.
[122] Rec. Doc. 30-5.
[123] Rec. Doc. 30-2.

Continuing, the School Board Defendants "expressly reject the allegation that the Past Board Members approved the MOU."[124] To support this statement, the School Board Defendants point to another exhibit: Board Policy EH, which states in pertinent part:

> The East Baton Rouge Parish School Board will solicit for professional services for which the cost of the services exceeds $10,000. … For services for which the cost does not exceed $10,000, the Superintendent or his/her designee may assign the work to a professional/firm on terms and conditions deemed to be in the best interest of the East Baton Rouge Parish School System.[125]

The School Board Defendants also refer to the Memorandum of Understanding document,[126] which was attached to the Amended Complaint and provides that "[t]he collaborator will provide financial support as a partner of this event in the amount of $9,800." Therefore, the School Board Defendants argue, "because the services for the [Day of Hope] Program valued less than $10,000, the [Day of Hope] Program was never presented to the Past Board Members for approval."[127] Relying on these policies, the School Board Defendants invite the Court to infer that the Past Board Members never addressed the Day of Hope in a legally called session, and thus conclude that the Past Board Members did not act under color of state law.

The problem of reliance on the School Board policies to prove a fact is highlighted here. Just because the Board has the delegated the discretion to execute contracts under $10,000 to its Superintendent is not proof that the Board lacked knowledge or did not assent to the contact.[128] The Board Policies are simply not evidence that the Day of Hope

---

[124] Rec. Doc. 30-1, p. 9.
[125] Rec. Doc. 30-3.
[126] Rec. Doc. 5-2.
[127] Rec. Doc. 30-1, p. 9.
[128] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1000 (9th Cir. 2018).

was not "approved by Bellue, Lanus, Gaudet, Howard, Collins, Ware-Jackson, Dyason, Bernard, and Tatman."[129] Further, this is not appropriate on a motion to dismiss, where Plaintiffs' factual allegations are to be taken as true.[130] To be clear, Board Policy EH provides only that the Superintendent "may" assign professional service work for services that cost less than $10,000, and that EBRSB "will" solicit professional services for those that cost more than $10,000. The School Board Defendants urge the Court to draw an inference in defeat of the plain allegations of the Complaint, which are deemed to true at this stage. The Court rejects the School Board Defendants' assertion that Board Policy EH establishes that "the [Day of Hope] Program was never presented to the Past Board Members for approval."[131]

Next, the School Board Defendants argue: "Also meritless is Plaintiffs' assertion that a Past Board Member's alleged knowledge of the true nature of the Program and failure to prohibit same constitutes acquiescence of the Program."[132] But this argument is also premised on the idea that the Past Board Members never actually "approved" the 2022 Day of Hope program as Plaintiffs allege, by considering MOU or otherwise. As discussed, the School Board Defendants cannot establish this by using EBRSB policies as evidence on a motion to dismiss.

The School Board Defendants also point to the meeting minutes of EBRSB for several months of board meetings preceding the 2022 Day of Hope event. The meeting minutes are attached to the School Board Defendants' Motion in the form of a 189-page

---

[129] *See, e.g.,* Rec. Doc. 4, ¶ 47.
[130] *See McKenzie v. Abbott Lab'ys,* 563 F. Supp. 3d 512, 519 (M.D. La. 2021) ("The Court's task on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to analyze the sufficiency of the complaint—not to consider evidence.").
[131] Rec. Doc. 30-1, p. 9.
[132] *Id.*

document.[133] Like with Board Policy EH, the School Board Defendants are in reality requesting that the Court draw an inference after reviewing this exhibit; as discussed, this goes beyond the intent of the practice of taking judicial notice of facts on a motion to dismiss. Additionally, "and more fundamentally, this is not the appropriate procedural posture for the Court to analyze hundreds of pages of documents."[134] Thus, the Court declines to review the nearly 200 pages of meeting minutes in furtherance of the School Board Defendants' attempt to factually rebut the allegations of the Amended Complaint. Such an endeavor is fundamentally at odds with the legal standards applicable to a 12(b)(6) motion.

For the foregoing reasons, and viewing the allegations in Plaintiffs' favor, the Court finds that the "color of law" element has been sufficiently pled as to the Past Board Members as well as Narcisse.

### b.  Individual-Capacity Claims and Qualified Immunity

Both Narcisse and the Past Board Members assert the defense of qualified immunity for the claims made against them in their individual capacities, which include violations of the First and Fourteenth Amendments. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[135] This defense operates to protect public officials who are performing discretionary tasks.[136]

---

[133] Rec. Doc. 30-4.
[134] *McKenzie*, 563 F. Supp. 3d at 519.
[135] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[136] *Huff v. Crites*, 473 F. App'x 398, 399 (5th Cir. 2012).

Qualified immunity does not extend to claims for declaratory and injunctive relief,[137] and "[t]he defense of qualified immunity applies only to suits against defendants in their individual capacities."[138] Therefore, the defense only applies to the individual-capacity claims against the Past Board Members and Narcisse for monetary relief.

The Court will first address whether Plaintiffs have alleged sufficient facts to state constitutional violations against Narcisse and the Past Board Members in their individual capacities. If so, the Court will turn to whether the rights violated were clearly established at the time of the alleged violations.[139]

### i.   Establishment Clause of the First Amendment

The Fifth Circuit recognizes the general proposition that states have the right to prescribe the academic curricula of their public school systems and courts should exercise great care and restraint when called to intervene in the operation of public schools.[140] However, the Supreme Court has repeatedly recognized the right of children and their parents to receive public education that is compliant with the Establishment Clause.[141]

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."[142] As the Supreme Court has stated, "government may not, consistent with a historically sensitive understanding of the

---

[137] *See, e.g., Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 925 F.2d 844, 849 (5th Cir. 1991).

[138] *Walker v. Howard*, 517 F. App'x 236, 237 (5th Cir. 2013).

[139] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[140] *Aquillard v. Edwards*, 765 F.2d 1251 (5th Cir. 1985).

[141] *Doe v. Sch. Bd. of Ouachita Par.*, 274 F.3d 289, 292 (5th Cir. 2001) (citing *Sch. Dist. of Abington Township v. Schempp*, 374 U.S. 203, 224 n.9 (1963); *People ex rel. McCollum v. Bd. of Educ.*, 333 U.S. 203, 206 (1948)).

[142] *Larson v. Valente*, 456 U.S. 228, 244 (1982).

Establishment Clause, 'make a religious observance compulsory.'"[143] Further, "[i]t is beyond dispute that ... the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise[.]"[144] In other words, "[g]overnment 'may not coerce anyone to attend church,' [ ] nor may it force citizens to engage in 'a formal religious exercise.'"[145]

According to the Amended Complaint, Narcisse and the Past Board Members "exposed Jennifer Roe and Jesse Doe to overt religious and sectarian activities through the 'Day of Hope' event, compelling their participation without their consent. These defendants promoted a specific religious agenda to unwilling students within their care and control."[146] Specifically, as to Narcisse, Plaintiffs allege that he 1) conspired to expose students to religious experiences through East Baton Rouge schools,[147] 2) developed the "Day of Hope" program to send students to a religious service on school time,[148] 3) concealed the religious and thematic nature of the "Day of Hope" program from parents and students,[149] 4) executed contracts for payment of East Baton Rouge School's funds to present the "Day of Hope" event,[150] and 5) directed the events leading to gender segregation, discrimination, and exposure to inappropriate adult themes without parental consent.[151] As to the Past Board Members, Plaintiffs primarily allege that they knowingly approved and condoned the Day of Hope and the activities that took place at the event.[152]

---

[143] *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 537 (2022) (quoting *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).
[144] *Lee v. Weisman*, 505 U.S. 577, 587 (1992).
[145] *Kennedy*, 597 U.S. at 537 (quoting *Zorach*, 343 U.S. at 314, and *Lee*, 505 U.S. at 577).
[146] Rec. Doc. 4, ¶ 46.
[147] *Id.* at ¶¶ 17, 21, 24-28, 30.
[148] *Id.* at ¶¶ 18, 21, 24-26-28, 30.
[149] *Id.* at ¶¶ 19-20, 24-28, 31.
[150] *Id.* at ¶¶ 22, 24.
[151] *Id.* at ¶ 32.
[152] *See Id.* at ¶¶ 22, 24, 40–43, 46, 56.

The School Board Defendants argue that Plaintiffs failed to allege any governmental action on the part of the individual Past Board Members. In support, the School Board Defendants argue again that the Past Board Members have no authority to act individually, and "Plaintiffs allege no competent evidence that indicates that the Past Board Members, as a body, approved the Program."[153] This argument fails. First, Plaintiffs are not required to produce "evidence" in support of their allegations in order to defeat a Rule 12(b)(6) motion. Plaintiffs repeatedly allege, and the Court must accept as true, that the Past Board Members knew about, acquiesced in, and approved the events that took place at the 2022 Day of Hope program.[154] As explained above, the School Board Defendants cannot use their exhibits to factually rebut the allegations that the Past Board Members "approved" the program. Even if the Court were inclined to treat this as a Rule 56 Motion for Summary Judgment, the offered exhibits do not establish an undisputed fact.  Accordingly, this argument of the School Board Defendants is rejected.

The School Board Defendants further argue:

> Even if the MOU was presented to the Past Board Members, their vote to approve it would have been based on reasons that neither advance or inhibit religion. The express language of the MOU contradicts any assertion that the Program's primary effect was to advance or inhibit religion.[155]

The Court agrees that the MOU itself[156] does not contain reference to any anticipated religious aspects of the Day of Hope program. However, this is not sufficient to warrant dismissal of Plaintiffs' First Amendment claim against the Past Board Members. Plaintiffs do not only allege that the Past Board Members approved the MOU; they also

---

[153] Rec. Doc. 30-1, p. 17.
[154] *See* Rec. Doc. 4, ¶¶ 22, 24, 40–43, 46, 56.
[155] Rec. Doc. 30-1, p. 17.
[156] Rec. Doc. 5-2.

allege more generally that the Past Board Members consented to and approved the concealment of the religious nature of the Day of Hope.[157]

In moving for dismissal, Narcisse does not specifically test the sufficiency of the elements of any of the specific claims in the Amended Complaint. Instead, he recites generic arguments without addressing particular claims. Narcisse broadly argues that "[t]here are no actual actions alleged in the complaint on the part of [Narcisse]" that could result in liability.[158] He claims the only word used in describing the actions of Narcisse against him in his individual capacity is "conspiracy."[159] As to the First Amendment claim, Narcisse's vague argument is rejected; as Plaintiffs point out, the Amended Complaint in several places details Narcisse's alleged role in the events giving rise to this lawsuit, including development of the Day of Hope program and concealment of its religious aspects.[160]

Reading the allegations in the light most favorable to Plaintiffs, the Court finds that the First Amendment claims against Narcisse and the Past Board Members survive the Motions to Dismiss. Plaintiffs allege sufficient facts to support the claim that at the "Day of Hope" event was a religious activity that violated their constitutional rights under the Establishment Clause. Plaintiffs allege the Day of Hope was a religious event during school hours, chaperoned by EBRSB employees, for public school students of the East Baton Rouge School System.[161] Plaintiffs allege Narcisse concealed the true nature of the event from parents and students to mask the overtly religious nature of the program,

---

[157] *See* Rec. Doc. 4, ¶¶ 22, 24, 40–43, 46, 56.
[158] Rec. Doc. 28-1, p. 5.
[159] *Id.* at p. 6.
[160] *See, e.g.,* Rec. Doc. 4, ¶¶ 17–19, 22.
[161] Rec. Doc. 4 at ¶ 18.

and that the Past Board Members knew about and approved this.[162] The allegedly coercive and fraudulent nature of the religious program raises the specter that the Establishment Clause was violated.[163] The Supreme Court has noted that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools," and "prayer exercises in public schools carry a particular risk of indirect coercion."[164] Plaintiffs plausibly allege that the Past Board Members' conduct resulted in such coercion to participate in the religious activities at the Day of Hope.

### ii. Fourteenth Amendment Right to Direct Care, Custody, and Control of Children

Plaintiffs allege the Day of Hope program violated Jane Roe and Jane Doe's right to direct the care, custody, and control of their children.[165] "The Fourteenth Amendment provides that no State shall 'deprive any person of life, liberty, or property, without due process of law.'"[166] The Supreme Court has recognized that "the [liberty] interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests" protected by the Fourteenth Amendment.[167] More recently, the Fifth Circuit reaffirmed that "[t]he rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious than property rights."[168] It is also clear that this parental right applies to religious issues; as the

---

[162] *Id.* at ¶ 19.
[163] *See McCreary Cty., Ky. v. Am. C.L. Union of Ky.*, 545 U.S. 844, 860 (2005).
[164] *Lee*, 505 U.S. at 592.
[165] Rec. Doc. 4, ¶¶ 49–53.
[166] *Troxel v. Granville*, 530 U.S. 57, 65 (2000).
[167] *Id.*
[168] *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)) (internal quotation marks omitted).

Supreme Court has stated, "we have long recognized the rights of parents to direct 'the religious upbringing' of their children."[169]

Again, Narcisse vaguely and inaccurately argues that the Amended Complaint lacks any factual allegations suggesting Narcisse's role and knowledge of the events giving rise to Plaintiffs' claims.[170]

The School Board Defendants argue that the parental interest is "not without limitation."[171] Specifically, they cite a Ninth Circuit case which states that the parental interest "do[es] not afford parents a right to compel public schools to follow their own idiosyncratic views as to what information the schools may dispense."[172] However, that case involved parents objecting to a single survey that was administered to their children at school which queried some sexual topics.[173] By contrast, this case involves a full-day event where the students were allegedly compelled to participate in "overt and sectarian activities" without the knowledge or consent of the parents.[174] The facts are distinguishable and dismissal is not warranted here.

The School Board Defendants also argue that Jennifer and Jesse were less impressionable than most students because they were seniors in high school at the time of the events.[175] The First Circuit has stated that "high school students [are] less impressionable than the very youngest children" with respect to "school policies regarding religion."[176] While this may be a relevant factor as the litigation proceeds, the fact that

---

[169] *Espinoza v. Mont. Dep't of Rev.*, 591 U.S. 464, 486 (2020) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 213–214, 232 (1972)).
[170] Rec. Doc. 28-1, pp. 5–6.
[171] Rec. Doc. 30-1, p. 18.
[172] *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005).
[173] *Id.* at 1200–1203.
[174] Rec. Doc. 4, ¶ 51.
[175] Rec. Doc. 30-1, pp. 18–19.
[176] *Parker v. Hurley*, 514 F.3d 87, 100 (1st Cir. 2008).

Jennifer and Jesse were high school seniors does not warrant dismissal of Jane Roe and Jane Doe's claim.

Based on the foregoing authority, and viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs plausibly allege a Due Process claim against Narcisse and the Past Board Members. The Amended Complaint plausibly alleges that Jennifer and Jesse were subjected to graphic lectures and religious programming in violation of Plaintiffs substantive due process liberty interest in directing the care, custody, and control of their minor children. Neither Narcisse nor the School Board Defendants have pointed to any Fifth Circuit or Supreme Court case law indicating that Plaintiffs' claim as alleged is not cognizable. Accordingly, dismissal is not warranted.

### iii.    Whether the Past Board Members' Conduct was Objectively Unreasonable in Light of Clearly Established Law

Because Plaintiffs have stated plausible claims against the Past Board Members under the First and Fourteenth amendments, Plaintiffs have overcome the first qualified immunity prong. As to the second prong, "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[177] "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct."[178]

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or

---

[177] *Sanford v. Kirst*, No. CV 21-347-JWD-RLB, 2023 WL 4052957, at *7 (M.D. La. June 16, 2023) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting, in turn, *White v. Pauly*, 580 U.S. 73, 78–79 (2017)).
[178] *Kisela*, 584 U.S. at 104 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

constitutional question beyond debate.'"[179] Put another way, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, … but it is to say that in the light of pre-existing law the unlawfulness must be apparent."[180]

Narcisse fails to address the second qualified immunity prong in any meaningful detail. The School Board Defendants argue that it would not have been clear to a reasonable official that their conduct was unlawful because "the only individuals that allegedly had actual knowledge of the alleged nature of the Program were Dr. Narcisse and Sterling."[181] The Court disagrees. First, as discussed previously, the fact that the MOU does not mention any religious aspects of the Day of Hope program does not lead unavoidably to the inference that the Past Board Members had no knowledge of the nature of the program. Further, the Amended Complaint states that "Narcisse and EBRSB agreed to mislead and coerce students and parents into allowing these students to attend" the Day of Hope, and this "proceeded with the consent and approval of" the Past Board Members.[182] There are several other allegations in the Complaint of the Past Board Members' participation, consent, and approval of the content and acts about which Plaintiffs complain.[183]

As to the First Amendment claim, Plaintiffs primarily rely on two Supreme Court cases for providing the contours of the rights that the Past Board Members allegedly

---

[179] *Id.* (quoting *White*, 580 U.S. at 551 (internal quotation marks omitted)).
[180] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citation omitted).
[181] Rec. Doc. 30-1, pp. 11–12.
[182] Rec. Doc. 4, ¶ 56.
[183] *See id.*, ¶¶ 40–43, 46, 51–52, 61–62.

violated: *Wallace v. Jaffree*[184] and *Lee v. Weisman*.[185] In *Wallace*, the Court invalidated an Alabama statute which authorized a one-minute period of silence in public schools "for meditation or voluntary prayer."[186] The Court reasoned that the statute was "not consistent with the established principle that the government must pursue a course of complete neutrality toward religion."[187] In *Lee*, the Court held that the inclusion of prayer by a rabbi at a public middle school graduation ceremony violated the Establishment Clause.[188] The Court explained that, "at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'"[189]

Although Plaintiffs have not pointed to a controlling case that perfectly aligns with the facts at hand, the Court finds that the contours of the right alleged to be violated are sufficiently clear. The Court in *Lee* noted that "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."[190] The Court reasoned that the risk of "indirect coercion" is "most pronounced" in the public school setting, and "[t]his pressure, though subtle and indirect, can be as real as any overt compulsion."[191] In this case, Plaintiffs allege they were subjected to an overtly sectarian experience at the school-sponsored Day of Hope

---

[184] 472 U.S. 38 (1985).
[185] 505 U.S. 577 (1992).
[186] *Wallace*, 472 U.S. at 40. The Court of Appeals also held unconstitutional a second Alabama statute "which authorized teachers to lead 'willing students' in a prescribed prayer to 'Almighty God ... the Creator and Supreme Judge of the world.'" *Id.* The Supreme Court affirmed that finding in a prior case, *Wallace v. Jaffree*, 466 U.S. 924 (1984).
[187] *Id.* at 60.
[188] *Lee*, 505 U.S. at 586.
[189] *Id.* at 587 (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984).
[190] *Id.* at 592.
[191] *Id.* at 592–93. Furthermore, the Supreme Court noted in another case that persuasion of students to take religious instruction may constitute impermissible coercion (*see Zorach*, 343 U.S. at 311).

event which was misleadingly presented to parents and students. The allegations taken as true suggest coercion as understood by Supreme Court precedent, and the prohibition against this practice was clearly established at the time of the alleged violation.[192] Accordingly, the Narcisse and the Past Board Members are not entitled to qualified immunity on the First Amendment claim.

As to the Fourteenth Amendment claim, Plaintiffs note the Supreme Court's pronouncement that the right of parents to direct the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court."[193] Plaintiffs rely on two earlier Supreme Court cases which underpin this interest, both about one hundred years old: *Meyer v. Nebraska*, where the Court "held that the 'liberty' protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to control the education of their own'";[194] and *Pierce v. Society of the Sisters*, holding that " [t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."[195]

The Court finds that the Fourteenth Amendment right Plaintiffs allege was violated was clearly established throughout the relevant time period. The Supreme Court has "long

---

[192] *See also Engel v. Vitale*, 370 U.S. 421, 424 (1962) ("We think that by using its public school system to encourage recitation of the Regents' prayer, the State of New York has adopted a practice wholly inconsistent with the Establishment Clause."); *School Dist. of Abington Township v. Schempp*, 374 U.S. 203 (1963) (nonmandatory recitation of Bible verses and prayer in public school violated the Establishment Clause); *and Santa Fe Independent School Dist. v. Doe*, 530 U.S. 290, 292 (2000) (school district violated the Establishment Clause by broadcasting a prayer over public address system before football games; the Court rejected the school district's argument that attendance at football games was voluntary, and thus there was no coercion, because there is "immense social pressure, or truly genuine desire, felt by many students to be involved in the extracurricular event that is American high school football. … The Constitution demands that schools not force on students the difficult choice between attending these games and avoiding personally offensive religious rituals.").
[193] *Troxel*, 530 U.S. at 65.
[194] *Id.* (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 401 (1923)).
[195] 268 U.S. 510, 535 (1925).

recognized the rights of parents to direct 'the religious upbringing' of their children."[196] By approving the events that allegedly took place at the Day of Hope, the alleged conduct of Narcisse and the Past Board Members was objectively unreasonable. Accordingly, the qualified immunity defense is rejected on the Fourteenth Amendment claim as well.

For the foregoing reasons, Plaintiffs have stated plausible individual-capacity claims against Narcisse and the Past Board Members under the First and Fourteenth Amendments, and those Defendants are not entitled to qualified immunity. Accordingly, the Motions to Dismiss these claims against Narcisse and the Past Board Members are denied.

### c. Official-Capacity Claims

As noted above, the official-capacity claims against the individual School Board members are dismissed as redundant of the claim against EBRSB itself. Thus, the official-capacity claims proceed only against EBRSB.

"Although municipalities cannot be held liable under Section 1983 by virtue of the doctrine of respondeat superior, they are subject to such liability where official custom or policy is involved in the injury."[197] This principle was first recognized in *Monell v. Department of Social Services*.[198] "Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."[199]

---

[196] *Espinoza*, 591 U.S. at 486 (citing *Yoder*, 406 U.S. at 213–214, 232).
[197] *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).
[198] 436 U.S. 658 (1978).
[199] *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

An "official policy or custom" giving rise to liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[200]  However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[201] To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' ... a plaintiff must do more than describe the incident that gave rise to his injury."[202] Further, to show "moving force" causation, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[203] "That is, 'the plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'"[204]

The School Board Defendants argue that the first *Monell* requirement is not satisfied because "Plaintiffs simply have not shown that the alleged violations of their rights were the result of an official School Board policy, practice, or custom that allowed student participation or attendance in 'overtly religious and sectarian programming.'"[205] Plaintiffs argue that the sponsoring and presenting of the Day of Hope was a "ubiquitous practice/custom" of the School Board Defendants.[206] Plaintiffs summarize the pertinent portions of the Amended Complaint as follows:

> Generally, the amended complaint alleges that the School Board Defendants presented the "Day of Hope" event beginning in 2016 with the specific purpose of "expos[ing]

---

[200] *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted).
[201] *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).
[202] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).
[203] *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown*, 520 U.S. at 404).
[204] *Id.* (quoting *Brown*, 520 U.S. at 411).
[205] Rec. Doc. 30-1, p. 13.
[206] Rec. Doc. 39, pp. 23–24.

public school children to overtly sectarian and religious experiences directly through [EBR Schools]." (Rec. Doc. 4 at ¶ 17). More specifically, the amended complaint alleges, with references to evidence, three separate "Day of Hope" events where students were instructed in and exposed to overt religious themes and proselytization: 2018, 2020, and 2022. (Rec. Doc. 4 at ¶¶ 20-21, 30, 38). All of these acts are alleged to have been done with the knowledge, acquiescence, and approval of the School Board Defendants. (Rec. Doc. 4 at ¶¶ 17, 22, 24, 29, 30, 31, 40, 41, 42, 43). The amended complaint likewise pleads that students were exposed to inappropriate themes and lectured to about "virginity, rape, abuse, and suicide." (Rec. Doc. 4 at ¶ 33).[207]

Under *Monell,* "policy" for which local governments may be responsible "consists of a 'policy statement, ordinance, regulation, *or decision* officially adopted and promulgated by that body's officers.'"[208] Plaintiffs argue that, even if presenting the Day of Hope in 2022 and prior years was not an official policy, "it was unquestionably a 'decision.'"[209]

In their Reply, the School Board Defendants acknowledge that a single decision may constitute a policy for which the municipality may be liable but emphasize that the decision must be made by a "policymaker."[210] The School Board Defendants maintain that Narcisse is the only individual who made any of the pertinent "decisions" that lead to Plaintiffs' alleged harms, and that Narcisse does not have policymaking authority.[211] The School Board Defendants point to a Louisiana state statute and multiple School Board

---

[207] *Id.*

[208] *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753 (5th Cir. 1993) (emphasis added) (quoting *Monell*, 436 U.S. at 690).

[209] Rec. Doc. 39, p. 25.

[210] Rec. Doc. 40, p. 7.

[211] Rec. Doc. 30-1, pp. 12–16. Plaintiffs assert that the question of who had policymaking authority is "a factual question that cannot be resolved at this stage." (Rec. Doc. 39, p. 25). However, the Supreme Court has made clear that "the identification of policymaking officials is a question of state law." *Praprotnik*, 485 U.S. at 124.

policies to argue that Narcisse lacked policymaking authority.[212] They cite La. R.S. 17:81(A)(1), which generally states: "Each local public school board shall serve in a policymaking capacity that is in the best interests of all students enrolled in schools under the board's jurisdiction."

The Court finds it unnecessary to resolve the issue of whether Narcisse was a policymaker at this stage for two reasons. First, the School Board Defendants are incorrect in arguing that Plaintiffs only alleged actions taken by Narcisse; as repeatedly stated, the Amended Complaint states multiple times that EBRSB and its members "approved," "sponsored," "promoted," and misleadingly advertised the Day of Hope events.[213] Second, according to the Supreme Court, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[214] Plaintiffs allege that Narcisse acted with the acquiescence, knowledge, and approval (i.e., ratification) of the School Board Defendants. These allegations are sufficient to survive the School Board Defendants' Motion to Dismiss on this basis; the School Board Defendants specifically acknowledge that the School Board has policymaking authority.[215]

The School Board Defendants additionally argue that "Plaintiffs have not demonstrated that the 2020 event was school sponsored."[216] In support, the School Board

---

[212] Rec. Doc. 30-1, p. 15. The School Board Defendants' attempted use of its policies as evidence to suggest that Narcisse lacked policymaking authority is rejected (*see* Rec. Docs. 30-7, 30-8, 30-9).

[213] *See, e.g.,* Rec. Doc. 4, ¶¶ 25, 31, 46.

[214] *Praprotnik*, 485 U.S. at 127. *See also Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 225 (5th Cir. 1999) ("The Board of Trustees' action in affirming Superintendent Brezina's decision to transfer the Plaintiffs was an act that 'may fairly be said to represent official policy' because of the Board's status as a policymaker.").

[215] Rec. Doc. 30-1, p. 15.

[216] Rec. Doc. 30-1, p. 14.

Defendants quote Board Policy KF[217] as stating: "Any person who is a resident of East Baton Rouge Parish may be permitted to use school facilities for meetings, programs, or other activities which are not prohibited by the laws of the State of Louisiana, or the United States of America." The Court rejects the School Board Defendants' attempt to use this exhibit to establish that the Day of Hope was not "school sponsored." Drawing this inference from the mere fact that others may also use school facilities would be an improper leap, especially on a motion to dismiss. Further, and more importantly, the language the School Board Defendants quote is absent from the portion of Board Policy KF attached to their Motion; this suggests that the exhibit is either incomplete or inaccurately cited.

For these reasons, the Court finds that Plaintiffs have sufficiently alleged an official policy of which a policymaker can be charged with actual or constructive knowledge, satisfying the first two *Monell* requirements. The School Board Defendants did not address the third *Monell* requirement ("moving force" causation), or the requirement of "deliberate indifference," in any detail. Without any meaningful opposition, the Court finds that the Plaintiffs adequately pled these threshold requirements of a *Monell* action.

"As is well established, every *Monell* claim requires an underlying constitutional violation."[218] As the Court has already found, Plaintiffs pled sufficient facts to survive the School Board Defendants' Motion to Dismiss Plaintiffs' claims under the First and Fourteenth Amendments. Since Plaintiffs have also sufficiently alleged that the School Board Defendants' conduct was the result of an official policy, that policymakers had

---

[217] Rec. Doc. 30-6.
[218] *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (internal citations and quotations omitted).

actual or constructive knowledge of the policy, and that this conduct caused the constitutional violations, the Motion to Dismiss the official-capacity claims against EBRSB is denied as to the Constitutional claims in Counts One and Two.

### 2. Title IX[219]

The parties agree that Plaintiffs' Title IX claims do not lie against any individual defendant.[220] However, Plaintiffs maintain that they have stated a Title IX claim against EBRSB for "intentional discrimination under a disparate treatment theory."[221]

Title IX prohibits discrimination on the basis of sex in federally-funded educational programs, providing that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[222] Title IX is enforceable by a private right of action for damages.[223] "The recognition of this private right of action has given rise to two general avenues for Title IX claims—one for claims based on an official policy of discrimination and another for claims based on an

---

[219] The Court notes that Plaintiffs' Title IX claim is properly characterized as its own cause of action, not brought under Section 1983. "Because a plaintiff can only bring a Title IX claim against institutions and programs that receive federal funds, and Section 1983 claims can be brought against individuals, providing a [Section] 1983 claim against individuals for Title IX liability would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Doe #1 v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 21-564-SDD-SDJ, 2022 WL 16701930, at *23 (M.D. La. Nov. 3, 2022) (quoting *Doe v. Napa Valley Unified School District.*, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018)) (internal citations and quotation marks omitted). *See also Wilkerson v. University of North Texas*, 223 F.Supp.3d 592 (E.D. Tex. 2016) (finding that the plaintiff could not state a claim under Section 1983 based on an underlying violation of Title IX because Title IX does not allow suit against individuals).
[220] Rec. Doc. 39, p. 35 (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009)).
[221] *Id.*
[222] 20 U.S.C. § 1681(a). Plaintiff alleges that EBRSB receives federal financial assistance (Rec. Doc. 4, ¶ 60).
[223] *Franklin v. Gwinnett Cty. Public Schs.*, 503 U.S. 60 (1992).

institution's actual notice of and deliberate indifference to sexual harassment or assault."[224]

"A plaintiff may obtain damages under Title IX 'where the funding recipient engages in intentional conduct that violates the clear terms of the statute.'"[225] "The Supreme Court has 'consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional discrimination.'"[226]

According to the Amended Complaint, Jennifer is female and Jesse is transgender.[227] The Title IX claim focuses primarily on two aspects of the Day of Hope program: 1) transgender and gender non-conforming students were forced into "either male or female segregated gender groups based on their outward appearance and without their consent";[228] and 2) while the male students engaged in "frivolous recreational activities," the female students were "exposed to a 'girls gender talk' including traumatizing lectures by pastors and other religious figures about virginity, rape, abuse, and suicide, even being told to 'forgive' their rapists and abusers."[229] Through these events, Plaintiffs allege that EBRSB "directed, permitted, and encouraged 29:11's and Sterling's direct and overt sex discrimination against public school students at the school-sponsored 'Day of Hope' event." Plaintiffs argue that "[t]his is clear intentional discrimination at the hands of the School Board Defendants[.]"[230] Plaintiffs also argue that Narcisse knew about the discrimination as it was taking place because he was present at

---

[224] *Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 467 (M.D. La. 2023) (quoting *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019)).
[225] *Klocke v. Univ. of Tex. at Arlington,* 938 F.3d 204, 209-210 (5th Cir. 2019) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)).
[226] *Id.* at 210 (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005)).
[227] Rec. Doc. 4, ¶ 63.
[228] *Id.* at ¶ 62.
[229] *Id.* at ¶ 61.
[230] Rec. Doc. 39, p. 36.

the Day of Hope, and that Narcisse was deliberately indifferent by allowing the events to continue without intervention by himself or anyone from EBRSB.[231]

The entirety of EBRSB's analysis in moving to dismiss the Title IX claim is as follows:

> First, Plaintiffs have not pointed to a written policy or custom of the School Board that intentionally discriminates against students on the basis of sex. Moreover, the basis of the Complaint clearly does not involve teacher-on-student or student-on-student sexual harassment.[232]

There appears to be no dispute that Plaintiffs' allegations fall generally into the "intentional discrimination" avenue of Title IX. However, the School Board Defendants are incorrect in their suggestion that the absence of a "written policy or custom that intentionally discriminates against students on the basis of sex" compels automatic dismissal of the action. In *Gebser v. Lago Vista Indep. Sch. Dist.*, the Supreme Court stated:

> Because the express remedial scheme under Title IX is predicated upon notice to an "appropriate person" and an opportunity to rectify any violation, 20 U.S.C. § 1682, we conclude, in the absence of further direction from Congress, that the implied damages remedy should be fashioned along the same lines. An "appropriate person" under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination. Consequently, in cases like this one *that do not involve official policy of the recipient entity*, we hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.[233]

---

[231] *Id.* at pp. 36–37.
[232] Rec. Doc. 30-1, p. 19.
[233] 524 U.S. 274, 290 (1998) (emphasis added).

The Court also decided that the standard for the response to the discrimination is the "rough parallel" to deliberate indifference:

> The administrative enforcement scheme presupposes that an official who is advised of a Title IX violation refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation. That framework finds a rough parallel in the standard of deliberate indifference.[234]

Summarizing *Gebser*, the Fifth Circuit states: "Boiled down, Title IX requires actual notice to an 'appropriate person' and 'an opportunity for voluntary compliance.'"[235]

Plaintiffs argue that under *Gebser*, Narcisse was an "appropriate person" whose actual knowledge of and deliberate indifference to the discrimination at the Day of Hope establishes a Title IX violation.[236] The Court finds that the allegations of the Amended Complaint state a plausible Title IX claim based on this reasoning. With no meaningful legal analysis from the School Board Defendants, the Motion to Dismiss the Title IX claim against EBRSB will be denied.

### 3. State-Law Claims

#### a. Negligence

Plaintiffs bring a claim against EBRSB for negligence, alleging EBRSB "failed to protect Jennifer Roe and Jesse Doe from bullying, harassment, and harm brought on by other students and by volunteers and adults at the 'Day of Hope' event under 29:11's and Sterling's direct control."[237] Plaintiffs state that representatives of EBRSB present at the event failed to intervene or otherwise stop the harassment.[238] Plaintiffs also complain of

---

[234] *Id.*
[235] *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d at 358 (quoting *Gebser*, 524 U.S. at 275, 288, 290).
[236] Rec. Doc. 39, p. 36.
[237] Rec. Doc. 4, ¶ 72.
[238] *Id.* at ¶ 34.

Jennifer and Jane being denied access to lunch "unless they completed a voter registration form and divulged their personally identifying information," alleging EBRSB failed to protect them from this conduct as well.[239]

Article 2320 of the Louisiana Civil Code provides the following, in pertinent part:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>
> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.[240]

In *Wallmuth v. Rapides Parish School Bd.*, the Louisiana Supreme Court set forth the duty of school boards to supervise its students under article 2320:

> A school board, through its agents and teachers, owes a duty of reasonable supervision over students. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. This duty does not make the school board the insurer of the safety of the children. Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision.
>
> Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. … Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and

---

[239] *Id.* at ¶ 73.
[240] La. Civ. Code art. 2320.

preventable if a requisite degree of supervision had been exercised.[241]

The School Board Defendants argue that "Plaintiffs fail to show that the events at the Program were foreseeable by [EBRSB]."[242] According to the School Board Defendants, Plaintiffs fail on the foreseeability elements because "[t]he [Amended] Complaint is bereft of any information concerning similar incidents that should have placed the School Board on notice."[243]

Plaintiffs argue the foreseeability element is satisfied because "Narcisse perpetrated, and the School Board Defendants knew about and approved, the actions that caused the [P]laintiffs' harm. At the same time, the injuries to the [P]laintiffs were integral parts of the 'Day of Hope': segregating students, bullying, harassment, and withholding food."[244] Plaintiffs maintain that "these policies and incidents were 'baked into' the programming—programming that was planned and executed by Narcisse with knowledge and approval from the School Board Defendants."[245]

Construing the allegations in the light most favorable to Plaintiffs, the Court finds that the foreseeability requirement is sufficiently alleged. Plaintiffs' case against EBRSB largely rests on the allegation that EBRSB knew about, approved, and consented to the Day of Hope events, both in 2022 and prior years. Based on these allegations, it is plausible that the harm that Jennifer and Jesse encountered was foreseeable.

---

[241] 2001-1779 (La. 4/3/02), 813 So. 2d 341, 346 (internal citations and quotation marks omitted).
[242] Rec. Doc. 30-1, p. 21.
[243] *Id.* at p. 22.
[244] Rec. Doc. 39, p. 37.
[245] *Id.*

The School Board Defendants do not specifically address any of the other negligence elements in moving to dismiss this claim; accordingly, the motion to dismiss is denied as to the negligence action.

### b. Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress under Louisiana law, a plaintiff must prove the following three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[246] "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."[247] Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of this cause of action.[248] "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[249]

Plaintiffs bring a claim for intentional infliction of emotional distress against EBRSB in Count Seven.[250] The allegations within Count Seven focus primarily on the conduct of Sterling and 29:11 in "purposefully and intentionally designed programming they knew or

---

[246] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).
[247] *Id.* at 1210 (citing Restatement (Second) of Torts § 46 (1965)); *see also Almerico v. Dale*, 927 So.2d 586, 592–93 (La. Ct. App. 5th Cir. 2006) (An employer's conduct must be "intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment, or worry.").
[248] *Schmidt v. Cal-Dive Int'l*, 240 F. Supp. 3d 532 (W.D. La. 2017); *see also White*, 585 So.2d at 1210.
[249] *White*, 585 So.2d at 1209.
[250] Rec. Doc. 4, ¶¶ 75–79.

reasonably should have known would cause substantial distress to students."[251] Plaintiffs also allege that Sterling and 29:11 "directed the gender- and sexual orientation-based harassment of LGBTQ+ students at the 'Day of Hope' event" and "directed the withholding of food from attendees of the event conditioned upon providing private personally identifying information."[252]

In moving to dismiss this claim, the School Board Defendants argue the following points: 1) all of Plaintiffs' allegations on this claim concern the conduct of Sterling and 29:11, not EBRSB; 2) the conduct at issue does not constitute extreme and outrageous behavior; 3) the allegations do not reflect that EBRSB desired to inflect severe emotional distress on Jennifer or Jesse; and 4) Jennifer and Jesse did not suffer severe emotional distress.[253]

Plaintiffs argue "the School Board Defendants are liable for sanctioning and approving the events that took place at the 'Day of Hope', and they should be held accountable."[254] Plaintiffs characterize the harm suffered by Jennifer and Jesse as follows:

> [B]eing forcibly put through a religious service, [ ] being forced to listen to and engage with religious figures telling them to "forgive their rapists and abusers", [ ] being segregated by gender and forced into a gender group by some bullying adult's assessment of their outward appearance, [ ] being bullied and taunted by other students with encouragement from adults, and [ ] being withheld essential services like food and restrooms."[255]

---

[251] *Id.* at ¶ 77.
[252] *Id.*
[253] Rec. Doc. 30-1, pp. 23–24.
[254] Rec. Doc. 39, p. 40.
[255] *Id.*

Plaintiffs maintain that "the School Board Defendants' acts and the acts of 29:11 that the School Board Defendants promoted and condoned" constitute extreme and outrageous conduct.[256]

The Court finds that, by a small margin, the allegations are sufficient to survive the Motion to Dismiss as to the claim for intentional infliction of emotional distress. Taking all of Plaintiff's allegations as true, it is plausible that the elements of the claim could be satisfied. Depending on how much the School Board Defendants knew about what would occur at the Day of Hope when they allegedly approved it, their behavior could be seen as extreme and outrageous. Similarly, the School Board Defendants' role in approving the event could lead to the inference that they knew severe emotional distress would occur. Finally, Plaintiffs adequately allege that Jennifer and Jesse suffered severe emotional distress; the Amended Complaint states that both suffered "severe" "mental anguish," and both are "seeking professional counseling services and remain traumatized by the event."[257] Therefore, the elements are sufficiently pled to survive the Motion to Dismiss by the School Board Defendants.

### c. Fraud

Article 1953 of the Louisiana Civil Code provides: "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."[258] "The elements of a Louisiana delictual fraud or intentional

---

[256] *Id.* at p. 41.
[257] Rec. Doc. 4, ¶ 79.
[258] La. Civ. Code art. 1953.

misrepresentation cause of action are: (a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."[259]

Plaintiff's fraud claims are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b).[260] A party claiming fraud must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[261] "[T]he pleading requirements of Rule 9(b) may be to some extent relaxed where ... the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge."[262] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[263]

Plaintiffs allege that Narcisse and EBRSB "fraudulently induced Jane Roe and Jane Doe to allow Jennifer Roe and Jesse doe to attend the 'Day of Hope'" by making intentionally false representations of the nature of the event.[264] For example, Plaintiffs allege that "EBRSB advertised the 2022 event to parents and students as a 'College and Career Fair', providing 'a college and career fair, breakout sessions, live music, a keynote speaker, free food, and more.'"[265] The Amended Complaint provides three alleged reasons that Narcisse and EBRSB made these misrepresentations:

> 1) to falsely bolster EBRSB's reputation for career placement, community outreach, and community involvement; 2) to

---

[259] *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999); *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir. 2008).

[260] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir.2008) ("state-law fraud claims are subject to the pleading requirements of Rule 9(b)").

[261] Fed. R. Civ. P. 9(b).

[262] *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (citing *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002)).

[263] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (cleaned up).

[264] Rec. Doc. 4, ¶ 82.

[265] *Id.* at ¶ 25.

ensure contractually-agreed to attendance at the "Day of Hope" event to avoid scrutiny for misuse of funds; and 3) to falsely claim that EBRSB and Narcisse are appropriately spending state and federal funds on college and career opportunities for students.[266]

Finally, Plaintiffs allege that if Narcisse and EBRSB had been truthful about the true nature of the event, neither Jane Roe nor Jane Doe would have permitted their children to attend, and neither Jennifer nor Jesse would have attended.[267]

The School Board Defendants first argue that Narcisse's allegedly fraudulent actions cannot be attributed to EBRSB because "Narcisse's actions, as alleged in the Complaint, are outside the course and scope of his employment."[268] In support, the School Board Defendants cite two EBRSB policies, attempting to use them as evidence that "Narcisse's alleged conduct was outside the authority granted to him by [EBRSB]."[269] As mentioned previously, "[t]he Court's task on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to analyze the sufficiency of the complaint—not to consider evidence."[270] Accordingly, the Court will not consider these exhibits in connection with the School Board Defendants' argument on the fraud claim. Moreover, the fraud allegations in the Amended Complaint refer to the actions of both Narcisse and EBRSB; Plaintiffs do not solely rely on Narcisse's actions to establish EBRSB's liability.[271]

Next, the School Board Defendants argue again that "the information relayed to it regarding the Program was the same as that relayed to Plaintiffs."[272] As explained before, the School Board Defendants' attempt to prove this assertion by reference to EBRSB

---

[266] *Id.* at ¶ 83.
[267] *Id.* at ¶ 85.
[268] Rec. Doc. 30-1, p. 25.
[269] *Id.* at p. 25 (relying on policies attached as exhibits to the Motion at Rec. Docs. 30-8 and 30-9).
[270] *McKenzie*, 563 F. Supp. 3d at 519.
[271] *See* Rec. Doc. 4, ¶¶ 82–85.
[272] Rec. Doc. 30-1, p. 25.

policies and the MOU is both insufficient to compel dismissal and inappropriate at this stage of the litigation.

Plaintiffs have plausibly alleged that EBRSB misrepresented the nature of the Day of Hope program with the intent to deceive, that Plaintiffs justifiably relied on the misrepresentation in deciding to attend (or allowing their children to attend) the program, and a resulting injury.[273] Accordingly, Narcisse and the School Board Defendants' Motions to Dismiss the fraud claims are denied.

### d. La. R.S. 17:406.9

La. R.S. 17:406.9 provides a right to parents and guardians of public school children to "receive written notice and have the option to opt their child out of instruction on topics associated with sexual activity."[274]  Plaintiffs allege Defendants failed to notify Jane Roe and Jane Doe in writing of their intent to provide this instruction to Jennifer and Jesse at the Day of Hope and failed to permit the parents to opt out.[275]

Neither Narcisse nor the School Board Defendants specifically address this claim. The Court finds that the cause of action was adequately alleged. Thus, to the extent Narcisse or the School Board Defendants seek to dismiss this claim, the Motions are denied.

### 4. Permanent Injunction

Plaintiffs allege that EBRSB and its current members "continue and intend to continue violating the rights of students in the East Baton Rouge Parish School System through continued partnerships with 29:11 and Sterling and by providing other

---

[273] *See* Rec. Doc. 4, ¶¶ 24–28, 30–31.
[274] Rec. Doc. 4 at ¶ 65.
[275] *Id.* at ¶ 67.

programming and events that violate the rights described herein."[276] Plaintiffs seek to enjoin EBRSB "from presenting, supporting, funding, facilitating, or promoting another 'Day of Hope' event and [ ] from further agreements with 29:11 or Sterling for programming of any kind."[277]

A plaintiff seeking a permanent injunction must demonstrate: "(1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[278]

EBRSB's sole argument for dismissal of Plaintiffs' claim for injunctive relief is that "Plaintiffs fail to state a viable claim for relief."[279] Given the Court has determined that Plaintiffs have stated plausible claims for relief, this argument is rejected, and the Motion to Dismiss Plaintiffs' request for injunctive relief is denied.

### 5. Declaratory Relief

The Amended Complaint contains the following request for a declaratory judgment: "Plaintiffs further request this Court enter a declaratory judgment declaring that the defendants have violated the plaintiffs' civil and other rights in the ways and manners described above."[280]

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

---

[276] *Id.* at ¶ 91.
[277] *Id.* at ¶ 92.
[278] *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).
[279] Rec. Doc. 30-1, p. 26.
[280] Rec. Doc. 4, ¶ 94.

interested party seeking such declaration."[281] "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."[282] "In analyzing whether to decide or dismiss the declaratory judgment suit, ... a federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action."[283]

The School Board Defendants argue that Plaintiffs' request for declaratory relief should be dismissed as redundant.[284] The Court agrees. As explained by another section of this Court:

> Courts have declined to exercise their discretion to decide declaratory judgment actions where deciding that action would be redundant in light of the affirmative causes of action before the Court. A declaratory judgment action is redundant for this reason if resolution of the affirmative claims and counter-claims before the Court would resolve all questions that the declaratory judgment action raises.[285]

Here, Plaintiffs' request for declaratory relief simply calls for a declaration that the Defendants violated Plaintiffs' rights in the manners already covered in the other causes of action. Accordingly, the Court declines to decide the declaratory judgment action, and Plaintiffs' request for declaratory relief will be dismissed as redundant.

---

[281] 28 U.S.C. § 2201(a).

[282] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

[283] *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 26 (5th Cir. 1989)).

[284] Rec. Doc. 30-1, p. 27.

[285] *Jones v. Gooden*, No. CV 21-372-BAJ-EWD, 2022 WL 1286231, at *2 (M.D. La. Feb. 25, 2022), *report and recommendation adopted*, No. CV 21-00372-BAJ-EWD, 2022 WL 944288 (M.D. La. Mar. 29, 2022). *See also Fisher v. Beers*, No. 13-6632, 2014 WL 3497572, at *4 n.2 (E.D. La. July 14, 2014) (noting that "[n]umerous courts ... have declined to entertain claims for declaratory relief when plaintiffs would get nothing from a declaratory judgment that they would not get from prevailing on their breach of contract claims") (internal quotations and citations omitted).

### 6. Subject Matter Jurisdiction

The School Board Defendants include a request for dismissal of the action due to lack of subject matter jurisdiction because "Plaintiffs have failed to state a cognizable federal law claim."[286] Because the Court has found that Plaintiffs have indeed stated cognizable federal claims, subject matter jurisdiction exists and this request is denied.

## III. CONCLUSION

For the reasons set forth above, Narcisse's and the School Board Defendants' *Motions to Dismiss*[287] are GRANTED IN PART and DENIED IN PART.

Defendant Sito Narcisse's *Motion* to dismiss pursuant to Rule 12(b)(1) on the basis of Eleventh Amendment immunity is DENIED. The *Motion* for more definite statement pursuant to Rule 12(e) is likewise DENIED. The *Motion* to dismiss pursuant to Rule 12(b)(6) is GRANTED only to the extent that all official-capacity claims against Narcisse are dismissed as redundant of the claims against EBRSB. Otherwise, the *Motion* to dismiss pursuant to Rule 12(b)(6) is DENIED as to all claims against Narcisse in his individual capacity. The *Motion* to dismiss for lack of procedural capacity pursuant to Rule 17 is DENIED as moot.

The *Motion* by Defendants East Baton Rouge Parish School Board ("EBRSB"), Mark Bellue, Dadrius Lanus, Michael Gaudet, Tramelle Howard, Dawn Collins, Evelyn Ware-Jackson, Jill Dyason, Connie Bernard, David Tatman, Carla Powell, Shashonnie Steward, Cliff Lewis, Nathan Rust, Katie Kennison, and Patrick Martin (collectively, the "School Board Defendants") is granted in part and denied in part as follows. The official-capacity claims against Defendants Mark Bellue, Dadrius Lanus, Michael Gaudet, Carla

---

[286] Rec. Doc. 30-1, p. 27.
[287] Rec. Docs. 28, 30.

Powell, Shashonnie Steward, Cliff Lewis, Nathan Rust, Katie Kennison, and Patrick Martin are dismissed as redundant of the claims against EBRSB. Accordingly, Defendants Carla Powell, Shashonnie Steward, Cliff Lewis, Nathan Rust, Katie Kennison, and Patrick Martin are hereby dismissed from this action because they were sued only in their official capacities. Further, the *Motion* to dismiss the Plaintiffs' request for declaratory judgment is GRANTED. Otherwise, the *Motion* to dismiss pursuant to Rule 12(b)(6) is DENIED as to all claims against Mark Bellue, Dadrius Lanus, Michael Gaudet, Tramelle Howard, Dawn Collins, Evelyn Ware-Jackson, Jill Dyason, Connie Bernard, David Tatman in their individual capacities, and as to all claims against EBRSB. The *Motion* is also DENIED to the extent the School Board Defendants seek dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The *Motion* to dismiss for lack of procedural capacity pursuant to Rule 17 is DENIED as moot.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this _3rd_ day of _____October_____, 2024.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**